FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 1 0 2026

TAMMY H. DOWNS, CLERK
By: _____ DEP CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

JOSH SANFORD

    Plaintiff,

v.

PREMIUM FINANCING SERVICE, LLC

    Defendant.

Hon. Judge _____

Case No. 4:26-cv-252-DPM

**DEMAND FOR JURY TRIAL**

Plaintiff Josh Sanford ("Plaintiff") brings this Complaint and the following cause of action against Defendant Premium Financing Service, LLC ("Premium Finance" or "Defendant") alleging as follows:

## INTRODUCTION

1. This case involves a telemarketing campaign by Premium Financing Service, LLC, who sent text messages and/or made phone calls to market its services by contacting numbers on the National Do Not Call Registry in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* (hereinafter referred to as the "TCPA").

2. The recipients of these illegal calls, which include Plaintiff, are entitled to damages under the TCPA, and because telemarketing campaigns send text messages *en masse*, the appropriate vehicle for recovery is a class action lawsuit.

This case assigned to District Judge **Marshall**
and to Magistrate Judge **Harris**

1

## PARTIES

**Plaintiff Josh Sanford**

3. Plaintiff is an individual residing in Little Rock, Arkansas.

**Defendant Premium Financing Service, LLC**

4. Defendant Premium Finance is a stock corporation organized under the laws of New Jersey with its principal place of business located at 411 Hackensack Ave, Suite 500, Hackensack, New Jersey 07601. Premium Finance can be served via its Registered Agent, Thomas Grubb, Jr. at 2047 Lucas Lane, Voorhees, New Jersey 08042.

## JURISDICTION AND VENUE

5. This Court has original subject-matter jurisdiction over Plaintiff's claims arising under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, pursuant to 28 U.S.C. § 1331 because those claims present a federal question.

6. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## TCPA BACKGROUND

7. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 613 (2020).

8. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire to not receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

9. So long as a number appears on the National Do-Not-Call Registry, it is illegal for a company to place any telephone solicitations to that number. 47 U.S.C. § 227(c)(3)(F). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

10. One exception to this rule is that the TCPA allows a company to solicit a consumer whose phone number is on the National Do-Not-Call Registry when it has an "established business relationship" ("EBR") with that consumer. 47 U.S.C. § 227(a)(4) (excluding from the definition of "telephone solicitation . . . any person with whom the caller has an established business relationship"). The Federal Communications Commission defined an EBR to mean "a prior or existing relationship formed by a voluntary two-way communication between a[n] . . . entity and a" consumer on the basis of the consumer's "purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call . . . , which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5). Among other things, a consumer can terminate an EBR with a company by asking the company to stop calling, even if the consumer continues to transact business with that company. *Id.* at § 64.1200(f)(5)(i).

11. A consumer whose number is on the National Do-Not-Call Registry and has received more than one telemarketing call within any twelve-month period by, or on behalf of, the same company in violation of the TCPA, can sue the company and seek the greater

of actual damages or $500, a figure that may be trebled for willful or knowing violations. 47 U.S.C. § 227(c)(5).

12. It is simple for companies to avoid calling numbers listed on the National Do-Not-Call Registry. They can easily and inexpensively "scrub" their call lists against the National Do-Not-Call Registry database. The scrubbing process identifies those numbers on the National Do-Not-Call Registry, allowing companies to remove those numbers and ensure that calls are no longer placed to consumers who opt-out of telemarketing calls.

13. To avoid violating the TCPA by calling registered numbers, companies, *inter alia*, must scrub their call lists against the National Do-Not-Call Registry at least once every thirty-one (31) days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

14. Regulations implementing the TCPA also require companies to maintain Internal Do-Not-Call Registries. 47 C.F.R. § 64.1200(d). Once a company receives a request from a consumer not to receive calls, the number must be placed on the company's Company-Specific Do-Not-Call List (the "Internal Do-Not-Call List") within a reasonable time, not to exceed thirty (30) days from the date of the request. *Id.* at § 64.1200(d)(3).

15. It has long been the law that a seller of goods or services can be liable for TCPA violations even if the seller does not directly place or initiate the calls. The provision that establishes a private right of action against an entity that violates the National Do-No-Call Registry restrictions provides that "[a] person who has received more than one telephone call within any twelve (12) month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action for damages and injunctive relief. 47 U.S.C. § 227(c)(5) (emphasis added). Likewise, 47 C.F.R. §

64.1200(d)(3) provides that once a number is added to a company's Internal Do-Not-Call List, the company "on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request."

16. As explained by the FCC, the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Mem. Op. & Order, 10 FCC Rcd. 12391, 12937, ¶ 1

17. The FCC reiterated this principle in 2005, when it stated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." *See 1995 TCPA Reconsideration Order; Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling*, Declaratory Ruling, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005).

18. The FCC reaffirmed this in 2013, when it held that (a) a seller may, under principles of apparent authority, actual authority, and ratification, be liable for violations of § 227(c) by third parties, and (b) a seller may also be liable, under the express terms of § 227(c), for calls placed "on behalf of" the seller. *In re Joint Pet. filed by DISH Network LLC*, Declaratory Ruling, 28 FCC Rcd. 6574 (2013).

19. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

20.     According to the online robocall tracking service "YouMail," 4.5 billion robocalls were placed in July 2023 alone, at a rate of 145.5 million calls per day. [1]

21.     The FCC has received an increased number of complaints about unwanted calls, with over 150,000 complaints in 2020, and over 160,000 complaints in 2021. [2]

22.     Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC. [3]

23.     "The FTC receives more complaints about unwanted calls than other Complaints combined." [4]

## FACTUAL ALLEGATIONS

24.     Plaintiff submitted his phone number to the National Do-Not-Call Registry on July 9, 2009.

---

[1]     *See July 2023 Nationwide Robocall Data*, YouMail: Robocall Index, www.robocallindex.com (last visited Oct. 20, 2025).

[2]     FCC, Consumer Complaint Data Center, https://www.fcc.gov/consumer-complaints-center-data (last visited Oct. 20, 2025).

[3]     FCC, *Stop Unwanted Robocalls and Texts*, https://www.fcc.gov/consumers/guides/stop-unwanted-robocalls-and-texts (last visited Oct. 20, 2025).

[4]     Staff of the Federal Trade Commission's Bureau of Consumer Protection, In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016)

25. Defendant Premium Finance operates from its Principal Place of Business in Hackensack, New Jersey.[5]

26. Defendant sends out text messages and/or phone calls to consumers in order to solicit business for its goods and services.

27. Plaintiff has never consented to receive calls or messages from Defendant regarding solicitations.

28. Between at least September 3 and September 15, 2025, Defendant sent, or caused to be sent, numerous unsolicited telemarketing text messages to Plaintiff's cellular telephone number, invading Plaintiff's privacy and disturbing Plaintiff's use of his cellular device.

29. Upon information and belief, in September of 2025, Defendant sent, or caused to be sent, no fewer than 13 unsolicited text/SMS messages to Plaintiff's cellular telephone number, all without Plaintiff's prior express consent.

30. Defendant's text messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

31. The information contained in the text message advertises Defendant's various promotions, which Defendant sends to promote its business.

---

[5] *Contact Us*, https://premiumfinancing.net/contactus-5062 (last visited September 3, 2025).

32. Defendant sent or caused to be sent the subject text messages from within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this jurisdiction.

33. Upon information and belief, Defendant caused other text messages to be sent to individuals from this judicial jurisdiction.

34. Defendant's text messages were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

35. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted.

36. Plaintiff has no existing business relationship with Defendant.

37. Plaintiff is the subscriber and sole user of xxx-xxxx-0776 and is financially responsible for phone service to that number.

38. Plaintiff registered his number with the National do-not-call registry on July 9, 2009 and has been registered at all times relevant to this action.

39. At the time Plaintiff received each of these text messages, Plaintiff never consented to receiving telemarketing calls or text messages from Defendant. As a result, Defendant should not have placed any telemarketing calls or text messages to Plaintiff.

40. The text messages originated from telephone number +1 (805) 424-8216, a number that, upon information and belief, is owned and operated by Defendant or on behalf of Defendant.

41. Defendant, or someone acting on its behalf, violated Plaintiff's privacy by making each of the above referenced unwanted telemarketing text messages, and they constitute a nuisance as they are annoying and harassing.

## CAUSE OF ACTION
### Violation of 47 U.S.C. § 227(c)
### Telemarketing in Violation of the TCPA's Do-Not-Call Provisions

42. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

43. In violation of 47 U.S.C. § 227(c), Plaintiff received telemarketing calls and/or text messages promoting the sale of Defendant's products or services on a residential/cellular phone line listed on the National Do-Not-Call Registry.

44. Plaintiff received more than one such call or text message in a 12-month period.

45. By virtue of the foregoing, Defendant violated 47 U.S.C. § 227(c) as to Plaintiff by initiating, on more than one occasion, a telemarketing call and/or text message to the residential/commercial telephone lines of Plaintiff without the prior express written consent or permission of Plaintiff, and without there being an active non-terminated EBR with the Plaintiff.

46. Pursuant to 47 U.S.C. § 227(c)(5), Plaintiff is entitled to recover from Defendant $500.00 in statutory damages for each such violation. In the event that Defendant is found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more than $1,500.00 for each such violation with Plaintiff.

47. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff also seeks injunctive relief prohibiting Defendant's violations of the TCPA in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant, awarding relief as follows:

a. A permanent injunction restraining Defendant from making, or having made on their behalf, any additional non-emergency calls to residential landlines that are on the National Do-Not-Call Registry without first obtaining the prior express written consent of the called/contacted party or at a time when no EBR exists between Defendant and the called/contacted party;

b. Pre-judgment interest from the date of filing this suit;

c. A reasonable attorney's fee to be paid out of any common fund created by virtue of this litigation;

d. All costs of this proceeding; and

e. All general, special, and equitable relief to which Plaintiff is entitled to by law.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.

DATED: March 10, 2026

Respectfully Submitted,

**SANFORD LAW FIRM, PLLC**
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

_____
Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com

11